UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

James Thomas Burke,

        Petitioner,

        v.                            Civil Action No. 5:19-cv-228-gwc-jmc

Mike Touchette et al.,

        Respondents.

## REPORT AND RECOMMENDATION
(Docs. 12, 17, 18, 20)

On November 29, 2019, James Thomas Burke, proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. 1.) While his § 2254 Petition has been pending, Burke has filed a number of other motions, requesting to be transferred to a Vermont prison facility from his current place of incarceration in Mississippi (Doc. 12), seeking the intervention of Chief Judge Crawford and the recusal of the undersigned Magistrate Judge (Doc. 17), moving for the Clerk's entry of default against Respondent (Doc. 18), and requesting an in-person evidentiary hearing and appointment of counsel (Doc. 20). Respondents have also filed a Motion to Dismiss (Doc 23), which Burke opposes (Doc. 24).

For the reasons set forth below, I recommend that the Motion for Intervention and Recusal (Doc. 17) and the Motion for Clerk's Entry of Default (Doc. 18) be DENIED. I further recommend that the Motion for a Transport Order Back to Vermont or, in the Alternative, to Use the Law Library (Doc. 12) be DENIED.

Finally, I decline to consider Burke's Motion for an evidentiary hearing and appointment of counsel (Doc. 20) or Respondents' pending Motion to Dismiss (Doc. 23) until Burke's Motion seeking the recusal of the undersigned has been decided by the presiding district judge.

## **Background**

In May 2010, a Vermont jury convicted Mr. Burke of one count of sexual assault in violation of Vt. Stat. Ann. tit. 13, § 3252(a)(1), and the Vermont Supreme Court affirmed that conviction in June 2012. *State v. Burke*, 2012 VT 50, 192 Vt. 99, 54 A.3d 500, *motion for reargument denied*, No. 2010–437 (Vt. July 11, 2012), *motion for reconsideration denied*, No. 2010–437 (Vt. July 30, 2012), *cert. denied*, 133 S. Ct. 795 (2012).  The court sentenced Burke to eighteen to twenty years' imprisonment. *State v. Burke*, 2012 VT 50, ¶¶ 1, 13.  Burke filed a direct appeal of his conviction raising numerous claims that the Vermont Supreme Court rejected, affirming his conviction on June 14, 2012.  *Id.* ¶ 1.

On September 4, 2012, Burke filed his first § 2254 petition in this court, raising all of the same claims as well as an ineffective-assistance-of-counsel claim. *Burke v. Pallito*, No. 2:12-CV-197 (D. Vt. Sept. 4, 2012).  On February 25, 2013, after this court deleted Burke's ineffective-assistance-of-counsel claim from his petition because it was unexhausted, Burke filed a postconviction relief (PCR) petition with the Vermont Superior Court, Chittenden Unit, Civil Division.  *See Burke v. Pallito*, No. 2:12-CV-197, slip op. at 4 (D. Vt. Nov. 8, 2013) (Conroy, Mag. J.).  In May 2017, the PCR court denied Burke's ineffective-assistance-of-counsel claims based on the court's determination that Burke's attorney did not provide ineffective counsel.

Burke appealed and, on April 19, 2019, the Vermont Supreme Court affirmed.  *In re Burke*, 2019 VT 28, 212 A.3d 189.

Burke's first § 2254 petition in this court collaterally challenged his May 2010 sexual assault conviction and the resulting sentence.  On November 21, 2013, the petition was denied because he failed to demonstrate a federal constitutional violation occurred during the state criminal proceedings.  *See generally Burke*, 2013 WL 6145810, *motion for reconsideration denied*, No. 2:12-cv-197 (D. Vt. Mar. 6, 2014).  The court held that because the Vermont Supreme Court did not violate or unreasonably apply clearly established federal law, federal habeas relief was unavailable under § 2254, and the petition was dismissed.  *See id.*, 2013 WL 6145810, at *9, 11, 13, 14, 20.  Burke's appeal to the Second Circuit was dismissed for failure to make a substantial showing of the denial of a constitutional right. *Burke v. Pallito*, No. 13-4831 (2d Cir. May 22, 2014).

In his present § 2254 Petition, Burke again seeks to challenge his May 2010 sexual assault conviction and resulting sentence and argues that the Vermont Supreme Court incorrectly decided his ineffective-assistance-of-counsel claim.  (*See generally* Doc. 1.)  As such, on December 18, 2019, the undersigned Magistrate Judge issued a Report and Recommendation to Chief United States District Judge Geoffrey W. Crawford, recommending the court find Burke's Petition to be second or successive under 28 U.S.C. § 2244(b) and be transferred to the Second Circuit. (Doc. 3.)  On January 20, 2020, Judge Crawford adopted the Report and Recommendation (Doc. 8) and on March 27, 2020, the Second Circuit issued its mandate granting Burke permission to file a successive § 2254 petition (Doc. 10).

Accordingly, on March 31, 2020, the undersigned Magistrate Judge ordered Respondent to file an answer to Burke's § 2254 Petition within 60 days, pursuant to Rule 5 of the Rules Governing Section 2254 Cases. (Doc. 11.) On May 26, the undersigned granted Respondent an extension of time until July 27, 2020 to file a Response. (Doc. 16.) Respondents subsequently filed an Answer and Motion to Dismiss on July 23, 2020. (Doc. 23.) Burke filed a Response in Opposition on August 6, 2020. (Doc. 24.) Burke's § 2254 Petition remains pending.

In the interim, Burke has filed several motions. On April 16, 2020, Burke filed a Motion seeking to be transported back to Vermont from his current place of incarceration at Tallahatchie County Correctional Facility (TCCF) in Mississippi or, in the alternative, to use the law library at TCCF. (Doc. 12.) He asserts that, as a 61-year-old male with underlying health conditions, he is at risk of serious harm or death due to the ongoing COVID-19 pandemic. (*Id.* at 1.) He claims that TCCF staff have tested positive for the virus and continued to go to work, thereby "causing several inmates to become exposed to the virus." (*Id.*) Finally, he broadly states that TCCF's COVID-19 policy "is not safe and [is] much to[o] [lax] to the point of negligence and it is just a matter of time before the out[-]of[-s]tate Vermont unit is unlawfully infected." (*Id.*) Alternatively, Burke seeks an order compelling TCCF staff to allow him regular use of the prison law library and typewriter. (*Id.* at 1–2.)

On June 3, 2020, Burke filed a Request for Clerk's Entry of Default on the grounds that Respondent had failed to file a Response within 60 days of this court's March 31, 2020 Order. (Doc. 18.) Respondents oppose Burke's Motion, arguing that they were granted an extension to July 27, 2020 to file a Response and, in any event,

4

a default judgment would not be an appropriate remedy for their alleged failure to respond to Burke's § 2254 Petition. (Doc. 19.)

On June 8, 2020, Burke filed a Motion for Chief Judge Crawford to Intervene and Recuse the undersigned Magistrate Judge, claiming bias and prejudice. (Doc. 17.) He claims that the undersigned "has always been bias[ed] . . . against Petitioner with his past and current [orders] together with his incorrect[], truth[-]twisting memorandums and recomm[en]dations." (*Id.* at 1, ¶ 1.) Specifically, Burke asserts that the December 18, 2019 Report and Recommendation incorrectly construed his § 2254 Petition as successive, "until again set straight by the Second Circuit," and that the undersigned overlooked his objection to that Report and Recommendation. (*Id.*) Burke also objects to the court's denial of his request to fix the out-of-order papers attached to his § 2254 Petition. (*Id.* ¶ 2.) He argues that the undersigned discriminated against him by allowing Respondent 60 days to file a Response to his § 2254 Petition—whereas, he contends, Rule 5 of the Rules Governing Section 2254 Cases only permits a respondent 30 days to answer—and by granting Respondent an extension of time. (*Id.* at 2, ¶¶ 4–5.) Burke further asserts that the undersigned is prejudiced against him because he has thus far "failed to even rule on Petitioner's Motion for a Transport Order or use of the jail law library." (*Id.* ¶ 6.)

Finally, on July 3, 2020, Burke filed a Motion seeking an in-person evidentiary hearing as well as the appointment of counsel. (Doc. 20-1.) In response, Respondents contend that Burke's request for an evidentiary hearing is premature under the Rules Governing § 2254 Cases and in light of the pending Motion to

Dismiss Burke's § 2254 Petition.  (Doc. 22.)  Accordingly, Respondents argue that his

Motion for an Evidentiary Hearing and Appointment of Counsel should be denied.

(*Id.*)

## Analysis

### I.   Motion for Recusal

#### A.   Legal Standards Governing Recusal of Judicial Officers

Motions seeking the recusal of judicial officers based on actual bias or

prejudice fall under two statutes: 28 U.S.C. §§ 144 and 455(b)(1).  Section 144

requires recusal when a party demonstrates that the judge has "a personal bias or

prejudice" against that party or in favor of an adverse party.  The moving party

must demonstrate bias or prejudice through the filing of a "timely and sufficient

affidavit."  28 U.S.C. § 144.  "The affidavit must be 'sufficient,' to provide 'fair

support' for the charge of partiality."  *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d

326, 333 (2d Cir. 1987) (quoting *Wolfson v. Palmieri*, 396 F.2d 121, 124 (2d Cir.

1968) (per curiam)); *see also Hoatson v. N.Y. Archdiocese*, No. 05 Civ. 10467(PAC),

2006 WL 3500633, at *2 (S.D.N.Y. Dec. 1, 2006) ("[A]ffidavits in support of the

motions pursuant to §§ 144 and 455(b)(1) require a factual demonstration of bias,

not simply the appearance of impropriety.").  If the affidavit sets forth a legally

sufficient basis for recusal, another judge must be assigned to resolve the motion.

*See* 28 U.S.C. § 144.  But no such forbearance is required where the supporting

affidavit is insufficient on its face.  *See Role v. Eureka Lodge No. 434*, 402 F.3d 314,

318 (2d Cir. 2005) (per curiam).  Whether the affidavit is legally sufficient is

determined within the court's discretion.  *See Apple*, 829 F.2d at 333.

Section 455(b)(1) similarly requires recusal "[w]here [the judge] has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." Because §§ 144 and 455(b)(1) are *in pari materia*, they are construed in the same manner. *See United States v. Pugliese*, 805 F.2d 1117, 1125 (2d Cir. 1986).

Recusal motions based on the broader ground of the appearance of partiality fall under 28 U.S.C. § 455(a), which provides that "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). An objective test applies: the judge must determine "whether an objective, disinterested observer, fully informed of the underlying facts, would entertain significant doubt that justice would be done absent recusal." *In Re Basciano*, 542 F.3d 950, 956 (2d Cir. 2008) (alterations and internal quotation marks omitted); *see also Chase Manhattan Bank v. Affiliated FM Ins. Co.*, 343 F.3d 120, 127 (2d Cir. 2003) (finding that whether partiality exists is determined "based on what a reasonable person knowing all the facts would conclude"). But § 455(a) "does not compel disqualification simply on unfounded innuendo concerning the possible partiality of the presiding judge." *Canino v. Barclays Bank, PLC,* No. 94 Civ. 6314(SAS), 1998 WL 7219, at *3 (S.D.N.Y. Jan. 7, 1998) (internal quotation marks omitted).

In assessing these grounds for recusal, the United States Supreme Court has noted that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Moreover, "opinions formed by the judge on the basis of facts introduced or events occurring in

7

the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*. As the Court of Appeals has observed:

> [R]ecusal is not warranted where the only challenged conduct consists of judicial rulings, routine trial administration efforts, and ordinary admonishments to counsel and to witnesses, where the conduct occurs during judicial proceedings, and where the judge neither (1) relies upon knowledge acquired outside such proceedings nor (2) displays deep-seated and unequivocal antagonism that would render fair judgment impossible.

*S.E.C. v Razmilovic*, 738 F.3d 14, 29–30 (2d Cir. 2013) (alterations and internal quotation marks omitted).

Recusal motions are committed to the discretion of the judge whose recusal is sought, who himself is "as much obliged *not* to recuse himself when it is not called for as he is obliged to when it is." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988) (emphasis added); *see also Ramirez v. United States*, No. 10 Civ. 4343(WHP), 2012 WL 3834675, at *1 (S.D.N.Y. Aug. 22, 2012) (recusal motions are determined by the judge "to whom the motion is directed" (internal quotation marks omitted)). In deciding whether to recuse himself, the judge "must carefully weigh the policy of promoting public confidence in the judiciary against the possibility that those questioning his impartiality might be seeking to avoid the adverse consequences of his presiding over their case." *In re Drexel Burnham Lambert Inc.*, 861 F.2d at 1312. Litigants, after all, are "entitled to an unbiased judge; not to a judge of their choosing." *Id*. Accordingly, "[m]ovants must overcome a presumption of impartiality, and the burden of doing so is substantial," meaning

that the motion must contain more than "vague contentions." *Thomas v. Trustees for Columbia Univ.*, 30 F. Supp. 2d 430, 431 (S.D.N.Y. 1998) (internal quotation marks omitted).

**B.    Application to Burke's Motion**

A close reading of Burke's Motion reveals there is no reason to grant the relief he seeks.  As a preliminary matter, Burke's Motion is not signed under the penalties of perjury pursuant to 28 U.S.C. § 1746.  Thus, his Motion cannot serve as an affidavit required under § 144.  Even if the Motion is construed as an affidavit, it is deficient as Burke's conclusions are not supported by facts sufficient to sustain a credible claim of judicial bias.  Burke's allegations plainly concern rulings and judicial actions taken in the context of the case.  *See Liteky*, 510 U.S. at 555; *see also Schiff v. United States*, 919 F.2d 830, 834 (2d Cir. 1990) ("Prior adverse rulings[,] without more, . . . do not provide a reasonable basis for questioning a judge's impartiality." (omission in original) (internal quotation marks omitted)).  More importantly, these allegations lack a basis in law or are simply erroneous.

For example, Burke asserts that the December 18, 2019 Report and Recommendation incorrectly construed his § 2254 Petition as successive and that the undersigned was "again set straight by the Second Circuit." (Doc. 17 at 1, ¶ 1.) However, the Second Circuit's March 27, 2020 mandate did not declare that the December 18 Report and Recommendation was incorrect or erroneous.  Instead, it simply granted Burke permission to file a successive § 2254 petition because it found he had met the requirements to do so under 28 U.S.C. § 2244(b)(2)(B).  (Doc. 10.) Moreover, this court did not "overlook" Burke's objection to the December 18 Report

9

and Recommendation.  The Order adopting the Report and Recommendation specifically indicated that the court had reviewed Burke's objections and considered them to be timely filed.  (Doc. 8 at 1, 2.)

Burke also asserts that the undersigned Magistrate Judge discriminated against him by allowing Respondents 60 days to file a Response to Burke's § 2254 Petition.  (Doc. 17 at 2, ¶ 4.)  He contends that Rule 5 of the Rules Governing Section 2254 Cases permits a respondent only 30 days to file a Response.  (*Id.*)  Burke is mistaken.  Rule 5(a) of the Rules Governing Section 2254 Cases expressly provides that "[t]he respondent is not required to answer the [§ 2254] petition unless a judge so orders."  In this case, the undersigned initially ordered Respondents to file a Response within 60 days of the March 31, 2020 Order.  (Doc. 11.)  Respondents were later granted an extension of time until July 27, 2020 to file a Response.  (Doc. 16.) *See Andrews v. Kelly*, No. 86 Civ. 0908 (CBM), 1987 WL 16157, at *2 (S.D.N.Y. Aug. 11, 1987) ("It is well within the discretion of a federal district court to grant a request for an extension of time to answer a habeas petition . . . .").  And although Burke appears to argue that this extension deprives him of the opportunity to file a Reply, his understanding is incorrect.  (Doc. 17 at 2, ¶ 5.)  *See* Rule 5(e), Rules Governing Section 2254 Cases, Advisory Committee Notes to 2019 Amendments ("[T]he petitioner has a right to file a reply to the respondent's answer or pleading.").  As indicated in the court's March 31, 2020 Order, Burke was allotted 30 days from the date of service of Respondent's Response/Answer to file his Reply.  (Doc. 11.)  *See* Rule 5(e), Rules Governing Section 2254 Cases ("The judge must set the time [for the petitioner] to file" a reply to the respondent's answer.).  Indeed, after Respondents

filed their Answer and Motion to Dismiss on July 23, 2020 (Doc. 23), Burke timely filed a Reply within 30 days on August 6, 2020 (Doc. 24).  Plainly, then, the extension granted to Respondents did not deprive Burke of his opportunity to file a Reply.

Finally, Burke asserts that the undersigned Magistrate Judge is biased against him because the court has not yet ruled on his Motion for a Transport Order to VT or to Use the Law Library.  (Doc. 17 at 2, ¶ 6.)  However, "[d]elays in entering judgment or rendering a decision are not bases for recusal."  *Qualls v. United States*, 07-CR-14 (DLI), 09-CR-418 (DLI), 2018 WL 1513625, at *2 (E.D.N.Y. Mar. 27, 2018); *see also Walker v. New York State Dep't of Corr. & Comm. Supervision*, 18-CV-6082(NSR), 2019 WL 624930, at *2 (S.D.N.Y. Feb. 14, 2019) ("Mere delay, without other facts or law, is not evidence of partiality or the appearance of partiality and certainly does not rise to the extremity required [for recusal].").  Moreover, Burke's Motion for a Transport Order is addressed as part of this opinion, below.

In short, Burke has failed to allege facts demonstrating bias or suggesting a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555.  Accordingly, I recommend that the Motion for Intervention and Recusal (Doc. 17) be DENIED.[1]

---

[1] To the extent Burke requests that Chief Judge Crawford "intervene" by no longer referring motions to the undersigned, he is not entitled to such a request.  (*See* Doc. 17 at 3).  The court is authorized to refer habeas corpus petitions and pretrial motions to a magistrate judge for a report and recommendation regarding disposition.  *See* 28 U.S.C. § 636(b); Rules 8 & 10 of the Rules Governing § 2254 Petitions in the United States District Courts; L.R. 72(a)(1), 73(f).  Furthermore, the court is authorized to refer such petitions to a magistrate judge without the parties' consent. *See McCarthy v. Bronson*, 500 U.S. 136, 139–40 (1991) ("Congress intended to authorize the nonconsensual reference of *all* prisoner petitions to a magistrate," including "applications for habeas corpus relief pursuant to 28 U.S.C. §[] 2254 . . . .").

## II.    Motion for Clerk's Entry of Default

Burke has also filed a Motion for Clerk's Entry of Default pursuant to Local Rule 55(a) and Fed. R. Civ. P. 55(a), arguing that Respondents failed to file a timely Response to his § 2254 Petition.  (Doc. 18.)  Rule 55 of the Federal Rules of Civil Procedure sets forth "a two-step process for the entry of judgment against a party who fails to defend."  *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (internal quotation marks omitted).  First, the petitioner must obtain a clerk's entry of default by showing that the opposing party "has failed to plead or otherwise defend."  Fed. R. Civ. P. 55(a).  Second, under Rule 55(b)(2), the petitioner must generally "apply to the court for entry of a default judgment." *Priestly v. Headminder, Inc.*, 647 F.3d 497, 505 (2d Cir. 2011).

Although Rule 55(a) contemplates that the first step, entry of default, "is a ministerial step to be performed by the clerk of court, a district judge also possesses the inherent power to enter a default."  *Mickalis Pawn Shop, LLC*, 645 F.3d at 128 (internal citations omitted).  In any case, as prerequisite to an entry of default, the petitioner must show "by affidavit or otherwise," that the opposing party "has failed to plead or otherwise defend" the action.  Fed. R. Civ. P. 55(a).  Here, Burke asserts that Respondents are in default because they did not file a Response to his § 2254 Petition within the original time allotted by the court.  (Doc. 18.)  *See Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61, 64 (2d Cir. 1986) ("[T]he typical Rule 55 case [is one] in which a default has entered because a defendant failed to file a timely answer . . . .).  While Burke is correct that the court initially ordered that Respondents file a Response within 60 days of the court's March 31,

2020 Order (*see* Doc. 11), the court later granted in part Respondents' request for an extension of time, ordering them to file a Response on or before July 27, 2020.  (Doc. 19; *see* Doc. 16.)  Respondents filed their Answer and Motion to Dismiss on July 23, 2020.  (Doc. 23.)  As such, Respondents did not fail to file a timely Response and have not failed to defend this action.

Even if Burke had shown that Respondents were in default for failure to timely file an Answer, default judgment would not be appropriate.  With regard to Burke's first § 2254 Petition, this court previously explained:

> As an initial matter, in the unique context of habeas proceedings, a default judgment is not a proper remedy for the Respondent's alleged failure to answer the Petition or to oppose the Petitioner's Motion.  *See McNally v. O'Flynn*, 2010 WL 891151, at *2 (W.D.N.Y. Mar. 10, 2010) ("Even if the Court were to determine that Respondent was in default for failure to timely file his responsive pleading, relevant Second Circuit precedent precludes the Court from granting a habeas petitioner's motion for default judgment based on respondent's failure to file his answer on time.") (citing *Bermudez v. Reid*, 733 F.2d 18, 21 (2d Cir. 1984)).  Notwithstanding a respondent's default, "there is a presumption" in habeas cases "that the state court judgment, pursuant to which [the petitioner] has been imprisoned, is valid until there is some showing that by constitutional standards it is not." *Bermudez*, 733 F.2d at 21.

*Burke v. Pallito*, Civil Action No. 2:12–cv–197, 2013 WL 496150, at *6 (D. Vt. Jan. 18, 2013) (Conroy, Mag. J.), *report and recommendation adopted*, 2013 WL 496344 (D. Vt. Feb. 11, 2013).  Accordingly, I recommend that Burke's Motion for Clerk's Entry of Default (Doc. 18) be DENIED.

## III.   Motion for Transport Order to Vermont or to Use Law Library

Finally, Burke moves to be transported back to Vermont from his current place of incarceration in Mississippi.  (Doc. 12 (COVID Motion).)  He expresses his

concern that, because he is 61 years old "with health conditions," he is at an

increased risk of contracting COVID-19. (*Id.* at 1.) He claims that an attorney at

the Vermont Prisoner's Rights Office has confirmed that TCCF staff have tested

positive for the virus yet still reported to work, thereby exposing inmates to COVID-

19. (*Id.*) Burke further asserts that TCCF's policies regarding the virus are "not

safe and much to[o] [lax] to the point of negligence." (*Id.*) He contends that "it is

just a matter of time before the out[-]of[-]state Vermont unit is unlawfully infected,

including [him]," whose pending habeas petition, he asserts, has "[f]ederal merit."

(*Id.*)

     As a general matter, of course, an inmate does not have the constitutional

right to be confined at an institution of their choosing. *See Olim v. Wakinekona*,

461 U.S. 238, 245 (1983) (inmates have no right to be confined in a particular state

or a particular prison within a given state); *Andrews v. Semple*, No. 3:17-cv-1233

(SRU), 2017 WL 5606740, at *4 (D. Conn. Nov. 21, 2017) (dismissing inmate's due

process claim because "he has no constitutionally protected right to be housed" at

the prison facility of his choice). However, as a *pro se* litigant, the court must

liberally construe Burke's Motion "to raise the strongest arguments [it] suggest[s]."

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal

quotation marks omitted). As such, the court interprets Burke's Motion to be

asserting that his continued custody at TCCF during the COVID-19 pandemic

violates his constitutional rights. Although Burke is entitled to liberal construction

of his filings, his *pro se* status "does not exempt [him] from compliance with the

relevant rules of procedural and substantive law." *See Siao-Pao v. Connolly*, 564 F.

Supp. 2d 232, 238 (S.D.N.Y. 2008) (internal quotation marks omitted).

### A.      Burke's Motion is Properly Brought Under § 2254

Burke submits his COVID Motion under the civil docket number of his

pending § 2254 proceeding.  Federal district courts have split over whether such

claims by state prisoners seeking release or transfer due to the COVID-19 pandemic

may be brought in a habeas action or should instead be brought as a civil-rights

claim under 42 U.S.C. § 1983.  *See, e.g.*, *Elleby v. Smith*, 20 Civ. 2935 (PAE), 2020

WL 2611921, at *3 (S.D.N.Y. May 22, 2020) (collecting cases and "declin[ing] to

dismiss [state inmate's habeas] Petition" because "it is an unresolved legal question

whether a habeas corpus is a proper vehicle for challenges to prison conditions based

on COVID-19," as opposed to a § 1983 action); *Money v. Pritzker*, 453 F. Supp. 3d

1103, 1118–119 (N.D. Ill. 2020) (concluding that state inmates could bring their

COVID-19 claims under § 1983 and/or § 2254); *compare Llewellyn v. Wolcott*, 20-CV-

498 (JLS), 2020 WL 2525770, at *3–4 (W.D.N.Y. May 18, 2020) (holding that state

prisoner's COVID-19 claim was properly brought as § 2254 habeas action), *with*

*Sisco v. Stanislaus Cty. Sheriff's Dep't*, Case No.: 1:20-cv-00947-JLT (HC), 2020 WL

3893396, at *3 (E.D. Cal. July 10, 2020) (holding that "petitioner's request relates to

the conditions of petitioner's confinement and accordingly is more appropriately

brought pursuant to 42 U.S.C. or § 1983").

Section 2254 "permits a state prisoner to file a habeas petition 'on the ground

that he is in custody in violation of the Constitution or laws . . . of the United

States.'" *James v. Walsh*, 308 F.3d 162, 167 (2d Cir. 2002) (quoting 28 U.S.C. §

2254(a)).  A "claim that one is 'in custody' in violation of federal laws [under § 2254] is broader than a claim that the imposition of one's sentence is illegal." *Id.*  Thus, "a state prisoner may challenge either the imposition or *the execution* of a sentence under Section 2254." *Id.* (emphasis added).[2]  As one court has recently observed, "[t]he Second Circuit has interpreted prison condition claims as comprising challenges to execution of a sentence in the context of federal prisoners." *Lawry v. Wolcott*, 20-CV-588 (JLS), 2020 WL 4018344, at *3 n.3 (W.D.N.Y. July 15, 2020); *see also Steward v. Wolcott*, Case # 20-CV-6282-FPG, 2020 WL 3574617, at *1 (W.D.N.Y. July 1, 2020) ("In the Second Circuit, prisoners may bring conditions of confinement claims as petitions for habeas corpus.").[3]  Specifically, the Second Circuit has held that challenges to the execution of a federal sentence may "includ[e] such matters as . . . *prison transfers*, type of detention[,] and prison conditions." *Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) (emphasis added) (internal quotation marks omitted); *see also Elleby*, 2020 WL 2611921, at *2 ("[T]he Second Circuit has held that both habeas petitions, at least for prisoners in federal custody,

---

[2]  The Second Circuit has held that federal prisoners, on the other hand, may challenge only the imposition of their sentence under 28 U.S.C. § 2255, but must bring challenges to the execution of their sentence under a different statute, 28 U.S.C. § 2241.  *James*, 308 F.3d at 167.  However, because the statutory language of § 2254 is broader, a state prisoner "not only may, but according to the terms of section 2254 must, bring a challenge to the execution of his or her sentence . . . under section 2254." *Cook v. New York State Div. of Parole*, 321 F.3d 274, 278 (2d Cir. 2003).  Section 2241 is "unavailable" to state prisoners.  *See id.*

[3]  The Supreme Court has expressly noted that it has "left open the question whether [detainees] might be able to challenge their confinement conditions via a petition for a writ of habeas corpus." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1862–63 (2017).  *See also Bell v. Wolfish*, 441 U.S. 520, 526 n.6 (1979) ("[W]e leave to another day the question of the propriety of using a writ of habeas corpus to obtain review of the conditions of confinement . . . ."); *Preiser v. Rodriguez*, 411 U.S. 475, 499 (1973) ("When a prisoner is put under additional and unconstitutional restraints during his lawful custody, it is arguable that habeas corpus will lie to remove the restraints making custody illegal.").

16

and § 1983 actions may address conditions of confinement and seek the remedy of

transfer (*e.g.*, to a different prison population or facility).").  "There is no reason to

conclude differently in the context of a state prisoner's prison conditions-based claim

under Section 2254."  *Lawry*, 2020 WL 4018344, at *3 n.3.

Although he is currently incarcerated at TCCF in Mississippi, Burke is in the

custody of the State of Vermont based on a Vermont state conviction and judgment.

He alleges that he is at an increased risk of contracting COVID-19 due to his age

and "health conditions."  (Doc. 12 at 1.)  He claims that TCCF staff have tested

positive for the virus yet still reported to work, thus exposing him to COVID-19.

(*Id.*)  Construed liberally, Burke's Motion alleges that his confinement at TCCF

during the COVID-19 pandemic violates his rights under the Eighth Amendment.

*Cf. Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("Nor can we hold that prison

officials may be deliberately indifferent to the exposure of inmates to a serious,

communicable disease . . . .").  In other words, Burke claims that his custody in

execution of his sentence violates his constitutional rights.  As such, his Motion falls

within the purview of § 2254.

Because Burke already has a § 2254 Petition pending—and because the

confinement underlying his COVID Motion resulted from the conviction challenged

in his existing § 2254 Petition—Burke's COVID Motion is construed as a motion to

amend his § 2254 Petition.  *See Brady v. Wolcott*, 20-CV-580 (JLS), 19-CV-1280

(JLS) (LGF), 2020 WL 3270378, at *5 (W.D.N.Y. June 17, 2020); *Valenzuela v.*

*Keyser*, No. 19-CV-3696 (KMK), No. 20-CV-3077 (KMK), 2020 WL 3839697, at *2

(S.D.N.Y. July 8, 2020) (noting that district courts in the Second Circuit have

construed pandemic-related emergency habeas motions as motions to amend, where an original habeas petition is already pending).

Motions to amend habeas petitions are governed by Rule 15 of the Federal Rules of Civil Procedure. *Mayle v. Felix*, 545 U.S. 644, 655 (2005); *Littlejohn v. Artuz*, 271 F.3d 360, 362–63 (2d Cir. 2001). Absent consent by the opposing party, a party who wishes to amend his pleading must obtain leave of court. *See* Fed. R. Civ. P. 15(a)(2).[4] Courts should "freely" grant leave to amend "when justice so requires." *Id.* However, a court may deny a motion to amend where the proposed amendment would be futile. *See Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 50 (2d Cir. 1999). Amendment is futile if the proposed claims are unexhausted and the "proposed amended [pleading] would be subject to immediate dismissal." *Id.* at 55. Because Burke has not presented the claims in his COVID Motion to a state court before presenting them to this court, leave to amend his § 2254 Petition to include those claims would be futile. *See Brady*, 2020 WL 3270378, at *5–6 (denying leave to amend habeas petition to include pandemic-related claims as futile when the petitioner failed to exhaust available state

---

[4] Rule 15(a)(1)(A) permits a party to amend his pleading once as a matter of course within 21 days after serving it on the opposing party. Here, more than 21 days passed between the time Burke filed his original § 2254 Petition, dated November 29, 2019 (Doc. 1), and the date he filed his Motion for Transport seeking to amend his Petition, dated April 16, 2020 (Doc. 12). Therefore, Burke may not amend his § 2254 Petition as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1)(A). Rule 15(a)(1)(B) provides that "if the pleading is one to which a responsive pleading is required," a party may amend within "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15 (a)(1)(B). "Rule 15(a)(1)(B) is inapplicable to habeas petitions because responsive pleadings are not required." *Argraves v. United States*, No. 3:11-CV-1421, 2013 WL 1856527 at *2 (D. Conn. May 2, 2013); *see* Rule 5(a), Rules Governing Section 2254 Cases ("The respondent is not required to answer the petition unless a judge so orders.").

remedies); *Elleby*, 2020 WL 2611921, at *4 ("In so ruling, the Court joins federal district courts around the country that have recently dismissed, or held dismissable, COVID-19-related § 2254 petitions for failure to exhaust state remedies.").

### B.    Failure to Exhaust State Remedies

Section 2254 requires a petitioner to show that he "exhausted the remedies available in the courts of the State" before a federal court will consider his request for relief.  28 U.S.C. § 2254(b)(1)(A).  To exhaust state remedies, a petitioner must "fairly present federal claims to the state courts . . . to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *McCray v. New York*, 573 F. App'x 22, 23 (2d Cir. 2014) (quoting *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011)).  A petitioner has fulfilled the exhaustion requirement if he presents the substance of his federal claims "to the highest state court from which a decision can be obtained." *Lewis v. Bennett*, 328 F. Supp. 2d 396, 403 (W.D.N.Y. 2004) (citing *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000)).

In Vermont, a petitioner may exhaust a claim that is not based on the trial record, such as Burke's claim related to COVID-19, by raising it "at any time" in a collateral petition for PCR.  *See* 13 V.S.A. § 7131 ("A prisoner who is in custody under sentence of a court and claims the right to be released . . . may at any time move the Superior Court . . . to vacate, set aside[,] or correct the sentence."); *In re Laws*, 182 Vt. 66, 72, 928 A.2d 1210, 1214 (2007) ("One fundamental aspect of post[]conviction relief is that a challenge to confinement may be brought at 'any time.'").  A petitioner is required to exhaust these state remedies even when he challenges the execution, rather than the validity, of his sentence under § 2254.  *See*

19

*Lawry*, 2020 WL 4018344, at *5.  Burke does not establish or even claim that he presented his COVID-19 claim to any Vermont court.

Section 2254 provides two narrow exceptions to the exhaustion requirement: (1) if "there is an absence of available State corrective process," 28 U.S.C. § 2254(b)(1)(B)(i); or (2) if "circumstances exist that render such process ineffective to protect the rights of the applicant," *id.* § 2254(b)(1)(B)(ii).  Neither exception applies here.  State court proceedings were available to Burke when he filed his COVID Motion on April 16, 2020 and they remain available now.[5]  Any claim that state courts were or are unavailable, "without any . . . factual or legal allegations to support [that] claim, is inadequate to show that there [was or] is no available process in the state courts."  *Rapeika v. Adm'r N. State Prison*, Civil Action No. 20-5358 (SDW), 2020 WL 2092790, at *2 (D.N.J. May 1, 2020).  Courts may excuse petitioners from exhausting their claims when "relief is truly unavailable," but where, as here, state courts are available, excusing the exhaustion requirement "would turn the habeas system upside down."  *Money*, 453 F. Supp. 3d at 1136.  For these reasons, Burke has not demonstrated that pursuing his COVID-19 claim in

---

[5]  *See* Vermont Judiciary, Administrative Order No. 49 (as amended Mar. 24, 2020), at 2, https://www.vermontjudiciary.org/sites/default/files/documents/AO%2049%20-%20Declaration%20of%20Judicial%20Emergency%20and%20Changes%20to%20Court%20Procedures%20with%20amendments%20through%203-24-20.pdf (clarifying that the suspension of non-emergency court hearings did not apply to habeas corpus petitions or "[p]roceedings directly related to the COVID-19 public health emergency"); *see also id.* (as amended December 4, 2020), at 20, https://www.vermontjudiciary.org/sites/default/files/documents/AO%2049%20-%20Declaration%20of%20Judicial%20Emergency%20and%20Changes%20to%20Court%20Procedures%20with%20amendments%20through%2012-4-20.pdf (stating that the May 13, 2020 amendment lifted the "blanket suspension" of non-emergency court proceedings).

Vermont state court "would be futile." *Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000).

As other courts in this Circuit have found in similar contexts, Burke's COVID-19 claim is unexhausted. *See Griffin v. Cook*, No. 3:20-cv-589 (JAM), 2020 WL 2735886, at *5 (D. Conn. May 26, 2020) (collecting cases); *Elleby*, 2020 WL 2611921, at *4 (same). Because Burke's Motion would be subject to immediate dismissal for failure to exhaust, amendment of his § 2254 Petition to include that claim would be futile. Accordingly, I recommend that the court DENY Burke leave to amend his § 2254 Petition, without prejudice.

### C.   Request for Order to Use Law Library

Finally, Burke requests an order compelling TCCF staff to allow him to use the law library and to provide tapes for the typewriters. (Doc. 12 at 1–2.) He states that he "need[s] a typewriter tape to litigate [his] legal [case]." (Doc. 12-2.) As Burke seems to concede, this type of claim would be more appropriately addressed in a § 1983 action. (Doc. 12 at 2.) Nevertheless, to the extent this claim is properly raised in the pending habeas action, it is without merit.

Inmates do not have an abstract, freestanding right to use a law library, and "restrictions on an inmate's access to a law library will generally not give rise to a constitutional claim, unless those restrictions have the effect of denying the inmate meaningful access to the courts." *Nevarez v. Hunt*, 770 F. Supp. 2d 565, 567 (W.D.N.Y. 2011) (citing *Cafferky v. Pallito*, No. 09–CV–193, 2010 WL 3025567, at *4 (D. Vt. July 1, 2010), *report and recommendation adopted*, 2010 WL 3025566 (D. Vt. July 29, 2010)). In other words, some alleged inadequacy or restriction on an

inmate's use of the law library, without more, is insufficient; rather, the inmate

"must go one step further and demonstrate that the alleged [restrictions or]

shortcomings in the library" hindered his efforts to pursue a legal claim, prejudiced

one of his existing actions, or otherwise actually interfered with his access to the

courts. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *see also Monsky v. Moraghan*,

127 F.3d 243, 247 (2d Cir. 2002).

Burke's claim appears to be that he has not been allowed timely and regular

use of the law library at TCCF and that he has been denied typewriter tapes.  (Doc.

12 at 1–2.)  However, Burke does not allege that these restrictions have actually

interfered with his access to the courts.  In fact, since Burke filed his Motion on

April 16, 2020, he has submitted five other filings in this habeas action.  (*See* Docs.

15, 17, 18, 20, 24.)  Because Burke has not alleged that he suffered any actual injury

due to his limited access to the law library, I recommend that Burke's Motion for an

Order to Use the Law Library (Doc. 12) be DENIED.  *See Shields v. Cannon*, No.

CIV S–11–3185 GGH P, 2012 WL 1604877, at *2 (E.D. Cal. May 7, 2012).

## Conclusion

For the foregoing reasons, I recommend that Burke's Motion for Intervention

and Recusal (Doc. 17) and Motion for Clerk's Entry of Default (Doc. 18) be DENIED.

I further recommend that Burke's Motion for a Transport Order Back to Vermont or,

in the Alternative, to Use the Law Library (Doc. 12) be DENIED.  Finally, I decline

to consider Burke's Motion for an in-person evidentiary hearing and appointed

counsel (Doc. 20) or Respondents' Motion to Dismiss (Doc. 23) at this time as Burke's

Motion seeking the recusal of the undersigned should be decided before proceeding further.

Dated at Burlington, in the District of Vermont, this 14th day of December 2020.

/s/ John M. Conroy _____
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).